Michel MAGAT, Adolphe Chapiro, and Jeanne Sebban, Plaintiffs,

v.

David L. LADD, Commissioner of Patents, Defendant.

Civ. A. No. 555–63.

United States District Court
District of Columbia.

Oct. 23, 1964.

Ralph D. Dinklage, Burgess, Dinklage & Sprung, New York City, Martin T. Fisher, Fisher, Christen, Sabol & Caldwell, Washington, D. C., for plaintiffs.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

Plaintiffs, Michel Magat, Adolphe Chapiro and Jeanne Sebban, brought this action pursuant to 35 U.S.C. § 145, seeking a judgment of this Court authorizing the defendant, Commissioner of Patents, to issue Letters Patent of the United States to the plaintiffs on an application for patent, Serial No. 553,157, filed December 14, 1955, entitled "Grafting Polymers or Copolymers."

The invention described in the application relates to the production of polymeric materials (plastics) by a process utilizing high energy (ionizing) radiation—such as gamma rays, x-rays and accelerated electrons—in order to produce a graft copolymer from a monomer selected from the group of known polymerizable vinyl and di-vinyl compounds and a polymer constituted of a different monomer. The process comprises irradiating a solution of the polymer and monomer, or a polymer swollen with the monomer, with radiation dosage sufficient to cause graft copolymerization of the monomer onto the polymer.

Claim 22 is representative of the issues presented, and reads as follows:

"22. In the process for producing graft copolymers, the improvement which comprises subjecting to high energy (ionizing) radiation a polymer/monomer composition being a member of the group consisting of solutions containing said polymer and said monomer and of said polymer swollen with said monomer, said monomer being at least one vinyl compound of the group consisting of vinyl and divinyl monomers and said polymer being constituted of a monomer different from the vinyl compound used, said irradiation being with an effective radiation dosage to cause graft polymerization of said monomer onto said polymer."

All the claims in the application (2 to 12, 17, 22 and 23) were rejected by the Patent Office on the theory that the subject matter they contained would have been obvious at the time the invention was made to a person ordinarily skilled in the art to which the subject matter pertained. 35 U.S.C. § 103. The Patent Office relied in this connection upon a British patent to Gates, No. 582,559, November 20, 1946; a publication by Lawton et al. in "Nature", Vol. 172, pp. 76 and 77, July 11, 1953; and a publication by Martin in the "Chemical and Engineering News", Vol. 33, No. 14, pp. 1424, 1425, and 1428, April 4, 1955. At trial the defendant also introduced an article by Bloomfield et al. in "Rubber World", Vol. 131, pp. 358–360 and 418, December, 1954.

The British patent states that "the object of the present invention is to provide a method whereby monomer/polymer doughs can be rapidly homogenized without significant polymerization." The method disclosed comprises mixing a powdered solid ethenoid polymer with a liquid ethenoid monomer, which is a solvent for the polymer, and heating the mixture at temperatures between 50° and 80° C.

The article by Lawton et al. discloses that polymers may be irradiated by high-energy electrons over a dose range from below one million to several hundred million roentgen units, and further discloses that the polymers irradiated fell into two classes, those that became cross-

linked and those that degraded. In addition to listing specific polymers found to cross-link, Lawton et al. state that "a number of other polymer mixtures, copolymers, and polymer-monomer mixtures have also been found to become cross-linked as a result of irradiation."

The article by Bloomfield et al. relates to grafting vinyl polymer side chains on to natural rubber molecules and points out that an $\alpha$-methylenic hydrogen atom of rubber should be easily removable to create a "free radical center" on a rubber molecule, and that "from this center a new polymer chain should grow." Bloomfield et al. reveal that graft copolymers were obtained by polymerizing methyl methacrylate or styrene in solution with natural rubber, using benzoyl peroxide as a catalyst. Bloomfield et al. further disclose that acrylates similarly give good yields of graft copolymer, but that "snappy", insoluble materials which appear to be heavily cross-linked are obtained if polymerization is allowed to run to high monomer conversion.

The plaintiffs' claims were finally rejected by the Examiner in the Patent Office on the theory that it would have been obvious to utilize high energy gamma radiation (as shown by Martin) instead of ultraviolet (or infrared) in the processes of the Gates patent. The Patent Office Board of Appeals disagreed with this, and held instead that plaintiffs' subject matter would have been obvious from a combination of Gates with the publication by Lawson. At trial, the Solicitor took the position that "if it were desired to produce soluble and/or moldable graft copolymers by irradiation, it would have been obvious to use for the polymer-monomer mixture of Lawton et al. a vinyl monomer and one of the polymers of a different monomer found by Lawton et al. to cross-link when irradiated."

Since a substantial disparity in viewpoints was presented by the Patent Office experts as to the scientific interrelation of the various references relied upon, the "presumption of correctness" [1] normally attaching to their decisions must here be accorded less than its ordinary weight.

In order to disintangle the terminological web surrounding the issues in this case, it was first shown by the plaintiffs, and tacitly conceded by defendant, that the term "graft-copolymer", as specified by the claims, is indeed distinct from the "cross-linked structure" shown by Lawton. In addition to the definitional and theoretical differences between these entities, they also seem to manifest differing physical properties. Evidence showed that graft-copolymers are always *soluble* in organic solvents and/or are *moldable*, while cross-linked structures are always *insoluble* and *non-moldable*. The practical importance of this difference is that the former can be spun or extruded into fibers, films, filaments, and the like, whereas the latter, being elastomeric, cannot, and are used instead where shape-retention and non-solubility are desired, as in vulcanized automobile tires.

The Board of Appeals apparently failed to appreciate the importance of this distinction, for their opinion termed it merely a "theoretical explanation of the mechanism of the reaction." As pointed out above, however, it is two different reactions, rather than two different explanations of the same reaction, that are in fact involved.

It follows from this that the Board's reliance upon Lawton in refusing plaintiffs' claims was unwarranted. Lawton discloses only a reaction producing cross-linked structures, and in no way suggests graft copolymers. Lawton's process, in fact, was shown not to be capable of producing graft copolymers due to the character of the mixture he chose for irradiation.

The Gates reference dealt with neither cross-linking nor graft copolymerization, being instead concerned with polymerizing a monomer in the presence of a catalyst to produce the monomer's homopolymer. Since the catalyst was in the form of a polymer, and since the polymer was

1. Abbott et al. v. Coe, 71 App.D.C. 195, 109 F.2d 449 (1939).

"swollen" with the monomer, the resulting substance corresponded to the substance recited by the plaintiffs' claims.

No suggestion appeared in Lawton, however, that his irradiation method could be used with other substances to produce graft copolymers. Similarly, no suggestion appeared in Gates that that method contemplated either graft polymerization or crosslinking. In view of this the Court can find no reasonable basis for combining them. As previously noted, this combination by the Board of Appeals was made only after misinterpreting the character of Lawton's reaction.

It was further proved at trial that plaintiffs' results were obtainable only when utilizing a vinyl or di-vinyl monomer. The Court agrees with the plaintiffs that Lawton, who contemplates literally thousands of monomers as possible for his reaction, could not have suggested the use of monomers of this particular type. The Bloomfield reference, introduced at trial, did mention that vinyl monomers might be graft copolymerized on natural rubber, but did not comprehend irradiation as a method for carrying out the reaction. The Court finds no reasonable basis for believing a person ordinarily skilled in the art would think to use the concept of Bloomfield in the irradiation process of Lawton, since Lawton's results are stated in his disclosure to be limited to cross-linked products.

The Patent Office also contended that plaintiffs, while disclosing both cross-linked structures and graft copolymers in their application, fail to so limit their claims as to exclude the former. The Court cannot agree. The claims call for a vinyl or di-vinyl monomer (excluding monomers of other types not producing graft copolymerization) a solution in which the polymer is swollen with the monomer (a solution apparently necessary to avoid cross-linking) and a dosage of irradiation effective (by its very terms) to cause graft polymerization of the monomer on to the polymer. The Court finds no basis either in law or fact for asserting that cross-linking is com-

prehended by this language. The step of limiting the dosage is obviously adequate to prevent cross-linking, since the dosage effecting graft copolymerization was shown to be less than that sufficient to cause cross-linking.

After reviewing the evidence as a whole, the Court concludes that the Patent Office rejection of plaintiffs' application was not consistent with the evidence. Accordingly, the Commissioner of Patents will be authorized to issue to plaintiffs Letters Patent of the United States containing claims 2 through 12, 17, 22 and 23 of the application at suit.

This Opinion contains Findings of Fact and Conclusions of Law.

